UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| DEBBIE ARLINGHAUS, as Administratrix of the Estate of Jessica Vanover and as Guardian and Next Friend of B.B., a minor, | ) ) ) ) | Civil Action No. 2: 22-012-DCR |
| Plaintiff, | ) ) ) | |
| V. | ) ) | |
| CAMPBELL COUNTY DENTION CENTER, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Debbie Arlinghaus originally filed a motion to compel production of certain discovery materials against Defendant Southern Health Partners. [Record No. 68] On August 24, 2023, shortly before this matter was transferred to the undersigned from Senior United States District Court Judge William O. Bertelsman, United States Magistrate Judge Candance J. Smith entered a Memorandum Order granting the motion, in part. [Record No. 81] Southern Health Partners subsequently filed objections pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. [Record No. 86]

For the reasons outlined below, Magistrate Judge Smith's order will be affirmed, and Southern Health Partner's objections will be overruled.

I.   **Background**

Arlinghaus, on behalf of the Estate of Jessica Vanover and her minor child B.B., filed this civil rights action in state court against Defendants Campbell County Detention Center,

- 1 -

individual employees of the Campbell County Detention Center, Campbell County, Kentucky, the Campbell County Fiscal Court, Southern Health Partners, and individual employees of Southern Health Partners. [Record No. 1] Arlinghaus alleges that the defendants violated the decedent's rights guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, she asserts claims under Kentucky law. *Id*. The case was removed from Campbell Circuit Court on February 9, 2022. [Record No. 1]

The issue presently pending before the Court arose from a dispute between Arlinghaus and Southern Health Partners, in part, over the implementation of a protective order during the written discovery phase of the case. Arlinghaus sought Southern Health Partners' training and policy manuals and emails from employees of Southern Health Partners. Ultimately, Magistrate Judge Smith deterined that Southern Health Partners failed to show that disclosure of the requested materials would cause "a clearly defined and very serious injury." Following review, Magistrate Smith granted the motion to compel without a protective order. [Record No. 81] She also rejected the argument that the emails were subject to protection from disclosure under the attorney work product doctrine.

Southern Health Partners objects to these portions of the Memorandum Order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. Specifically, it contends it should not have to provide these materials without a protective order because the company believes the materials contain proprietary business information that require protection from public view. And Southern Health Partners continues to claim that emails from its employees to corporate supervisors are entitled to work product protection.

## II. Legal Standard

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Under Rule 26(b)(2)(C), a court may limit discovery if it determines that a request is unduly burdensome, cumulative, duplicative, or available through other avenues. *See also Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Both federal law and the Federal Rules of Civil Procedure provide for reconsideration by the district court of an order issued by a magistrate judge. 28 U.S.C. 636(b)(1)(A; FED. R. CIV. P. 72(a). In reviewing a magistrate judge's discovery order, the Court should affirm the determination unless it is "clearly erroneous or contrary to law." *Id*. A finding meets this standard when a reviewing court is left with a definite and firm conviction that a mistake has been committed. *Heights Community Congress v. Hilltop Realty*, 774 F.2d 135, 140 (6th Cir. 1985).

## III. Discussion

### A. Protective Order

Southern Health Partners argues that Magistrate Smith erroneously concluded that the company's policy and procedure manuals and training materials as requested in Interrogatories 14 and 15 do not constitute trade secrets or confidential business information worthy of a protective order. Although the Magistrate Judge acknowledged that the company "keeps their policy manuals confidential among[] its employees and spends significant time in developing their policies," she concluded that courts within the Sixth Circuit "have not found those

measures reason enough to consider them trade secrets" warranting protection under Rule 26(c) of the Federal Rules of Civil Procedure. [Record No. 81]

Under the Rule 26(c)(1)(G), a Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information may not be revealed or be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G). Good cause exists when the party moving for a protective order "articulate[s] specific facts showing 'clearly defined and serious injury' resulting from the discovery sought." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). However, "vague and conclusory allegations of confidentiality and competitive harm are insufficient." *Mitchell v. Home Depot U.S.A., Inc.*, 2012 WL 2192279 at *4-5 (W.D. Ky. Jun. 14, 2012). The movant must instead make 'a particularized showing that the information sought is confidential' and come forth with 'specific examples' of competitive harm." *Id.*

Southern Health Partners argues that other companies will attempt to replicate their developed programs identified in their policies and procedures manuals and contends that the company will suffer irreparable harm if this information is disclosed. More generally, the company claims that these policies and procedures are based on more than industry standards, citing the company President and CEO Jennifer Hairsine's affidavit describing her qualifications and the processes used to develop content in the subject manuals. Hairsine contends that Southern Health Partners' policy and procedures are based, in part, on the standards of the National Commission on Correctional Health Care, but she contends that Southern Health Partners has customized various provisions over time.

Southern Health Partners challenges the Magistrate Judge's reliance on *Motto v. Correctional Medical Servs.*, 2009 WL 347432 (S.D. W.V. 2009). It argues that the court's *in camera* review of documents comparing the defendant's policies and procedures to the national standards in *Motto* sufficiently differentiates the case from the instant matter where the court has not conducted such a review. Next, it cites a separate case that distinguishes *Motto* on the basis that "a company's internal policies and procedures qualified as confidential commercial information because they were not based on general guidelines published by a third party, but instead, were created by the party." *Carlisle v. Allianz Life Ins. Co.*, 540 F. Supp, 3d 567, 570 (E.D. Va. 2021) (quotations omitted). However, as applicable here, *Motto* expressly noted that even when a defendant "argue[s] that they have expended significant time and expense developing their policies and that public dissemination would allow competitors to duplicate the policies without incurring any expense, [] courts have rejected the above as grounds for finding that a company's policies qualify as confidential commercial information." *Motto*, 2009 WL 347432, at *5 (citing *Braack v. Home Depot U.S.A., Inc.*, 2007 WL 2156371 (W.D. Wash. 2007) and *Zahran v. Trans Union Corp.,* 2002 WL 31010822 (N.D. Ill. 2002)). Even more, Magistrate Judge Smith found that the facts in *Motto* were like those here.

Put simply, Southern Health Partners has not shown that Magistrate Judge Smith's determination was clearly erroneous or contrary to law. Although the Court accepts that the company has tailored its policies beyond industry standards, courts within the Sixth Circuit have not found such a measure sufficient to be considered as a trade secret or confidential business information warranting a protective order. *See, e.g., Mitchell*, 2012 WL 2192279 at *5 ("[A]lthough Home Depot's [standard operating procedures] and training materials are labeled confidential and are developed through significant expenditures of time and effort, the

[c]ourt finds that they are not the type of documents entitled to protection under Rule 26(c)."); *see also Borum v. Smith*, 2017 WL 2588433 at *3 (W.D. Ky. June 14, 2017) ("[The defendant] has done nothing more than provide a general recitation that the documents in question satisfy the elements constituting a trade secret."). Further, it is difficult to construe the company's manuals as trade secret or confidential business information when they have been made part of the record in other cases within this district. *See, e.g., Thomas v. Southern Health Partners, Inc.*, 2023 WL 3935047 (E.D. Ky. May 9, 2023); *Hall v. Carl*, 2022 WL 2442199 (E.D. Ky. Oct. 8, 2021).

      B.     **Work Product**

Southern Health Partners also contends that Magistrate Judge Smith erroneously concluded that the emails requested in Interrogatory No. 18 are not subject to work product protection.[1] The emails allegedly contain relevant facts and circumstances surrounding the decedent's death. Specifically, the company claims that these emails were inaccurately determined to be records prepared in the "ordinary course of business" which do not merit protection under Rule 26(b)(3) of the Federal Rules of Civil Procedure.

As a general matter, Rule 26(b)(3) addresses attorney work product and protects "documents and tangible things" from discovery "that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3). For emails to be considered "prepared in anticipation of litigation," the Court must determine "(1) whether

---

[1] Southern Health Partners concedes that "[t]he court correctly observe[d] that none of the emails document a direct instruction from General Counsel to perform an investigation due to a concern with impending litigation which may vitiate a claim of attorney-client privilege." [Record No. 86] As such, it does not argue that the emails at issue are protected by attorney-client privilege in its brief objecting to the Memorandum Order. *Id.* Therefore, the Court will forgo this analysis.

a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006).

Once the party requesting the discovery establishes relevance, the burden is on the party claiming protection to show that anticipated litigation was the driving force behind the preparation of each requested document. *Id*. at 595. When an attorney claims this privilege, the party must "(i) expressly make that claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A).

Southern Health Partners takes issue with Magistrate Judge Smith's conclusion that the company's "driving force" behind the preparation of each requested email was not in anticipation of litigation. *See Roxworthy*, 457 F.3d at 594. Each originated on the date of the decedent's death from either Merissa Sparks, the nurse on duty at the time of the incident, or Ashley Tucker, Medical Team Assistant and Sparks' supervisor. They were directed to Hanna Bishop, assistant to the general counsel, and Krystal Sounders, Vice President of Operations. The company argues that "[g]iven the society we live in, litigation can reasonably be anticipated in the event of an inmate death" and "the actions of counsel and operations in this matter could be said to be prescient, given the existence of this lawsuit." [Record No. 69] But they provide little more detail to suggest that the subject emails were prepared in anticipation of litigation rather than in the ordinary course of business.

In fact, Southern Health Partners concedes that Magistrate Judge Smith "correctly observe[d] that none of the emails document a direct instruction from General Counsel to

perform an investigation due to a concern with impending litigation." [Record No. 86] Instead, the company emphasizes that Sparks, in emailing her superiors, "was acting in accordance with [company] policy, created by General Counsel, which dictates certain actions in the event of an inmate death." *Id*. But an employee merely following routine internal processes that involve notifying superiors of an inmate's death does not alone establish that the purpose was to prepare for impending litigation. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 382 (6th Cir. 2009) ("[Defendant] did not come forward with . . . the kind of 'specific and detailed' evidentiary material that would be sufficient to meet this burden.") (quoting *Roxworthy*, 457 F.3d at 597). As Magistrate Judge Smith emphasized, there are many possible "ordinary business purposes" for sending these emails, such as for creating an incident report. As such, it does not appear that Magistrate Judge Smith committed an error of law by determining that the company failed to "make a showing that the possibility of litigation was the driving force behind the preparation of each email." [Record No. 81]

Accordingly, it is hereby

**ORDERED** that the Memorandum Order issued by Magistrate Judge Candance J. Smith [Record No. 81] is **AFFIRMED**. Southern Health Partners' objections to Magistrate Judge Smith's Memorandum Order [Record No. 86] pursuant to Rule 72(a) of the Federal Rules of Civil Procedure are **OVERRULED**.

Dated: June 24, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky